**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant,**

v.

**STEEPLE JAC, INC., a Minnesota Corporation, and Alpana Aluminum Products, Inc., a Minnesota Corporation, Respondents.**

No. C0–83–1910.

Court of Appeals of Minnesota.

July 31, 1984.

Richard F. Rosow, Lang, Pauly & Gregerson, Ltd., Minneapolis, for appellant.

Douglas R. Archibald, Jesse & Cosgrove, Minneapolis, for respondents.

Heard, considered and decided by LANSING, P.J., and FOLEY and LESLIE, JJ.

## OPINION

LANSING, Presiding Judge.

Plaintiff brought this action for damages under theories of breach of warranty, negligence and strict liability. Its claim for breach of warranty was barred by the statute of limitations and dismissed. The trial court later dismissed plaintiff's negligence and strict liability claims on defendant's motion for summary judgment. Plaintiff appeals from the order granting summary judgment.

We affirm the trial court's order granting summary judgment.

## FACTS

Plaintiff's insured, the Osborn Building in downtown St. Paul, Minnesota, purchased an automatic window washing unit manufactured by Steeple Jac, Inc. Some years later the window washing unit was damaged when it fell from the Osborn building. Plaintiff paid Osborn for its loss and then sought recovery from Steeple Jac, Inc., and Alpana Aluminum Products, Inc. Plaintiff alleged a defective gear box caused the window washing unit to fall and based its action on warranty, negligence and strict products liability theories.

During the initial stages of litigation, plaintiff's warranty claim was dismissed because the statute of limitations had run.

Steeple Jac, Inc., was dismissed as a defendant for reasons not material here.

Defendant Alpana Aluminum then brought a motion for summary judgment, claiming that recovery for plaintiff's damages is not available under negligence or strict products liability theories. Plaintiff appeals from the trial court's order granting summary judgment.

## ISSUE

██ May plaintiff recover under strict liability and negligence theories for damages to a product caused by a defect in the product itself when the defect causes no personal injury or damage to other property?

## ANALYSIS

This case presents a difficult question for this court requiring interpretation of *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981). In *Superwood* the Supreme Court relied in part upon *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965), to hold that:

> economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability.

*Superwood*, 311 N.W.2d at 162. The *Superwood* decision has caused some confusion because it cites *Seely* with approval yet formulates a rule that appears to conflict with the definition given to "economic loss" in the *Seely* decision and by the majority of jurisdictions following *Seely*.

The central dispute is whether allowing recovery under strict liability and negligence for damage only to a defective product itself will substantially undermine the warranty provisions of the Uniform Commercial Code (U.C.C.). In many cases a cause of action for breach of contract or warranty would lie but for the lapse of time. Since the statutes of limitations are uniformly longer for negligence and strict liability claims, plaintiffs instead attempt

recovery under these theories. Courts have reached varying results, sometimes using complex and intricate rules.

Two distinct lines of cases have developed on this issue:[1] the majority follows *Seely;* the minority follows *Santor v. A and M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965). In *Santor,* decided first, the New Jersey Supreme Court freely allowed recovery under negligence and strict liability theories for damage to a defective product itself, without regard to whether the damage constituted physical loss or economic loss. The *Seely* court, on the other hand, distinguished between physical injuries and economic loss and held that economic losses caused by a defective product could not be recovered under negligence and strict liability theories but could be recovered only under the warranty provisions of U.C.C. Article 2 sales law.

The issue for those states following *Seely* then becomes distinguishing between "economic loss" that cannot be recovered under negligence and strict liability theories and physical damage which can be recovered.

In cases such as the present one where only the defective product is damaged, the majority approach is to identify whether a particular injury amounts to economic loss or physical damage. In drawing this distinction, the items for which damages are sought, such as repair costs, are not determinative. Rather, the line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim.

*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1173 (3rd Cir.1981).

The majority of the jurisdictions that follow *Seely* exclude from the definition of economic loss damages arising from an *unreasonably dangerous defect.*[2] They characterize these damages as physical damage or physical injury. Damages caused by defects which are *not unreasonably dangerous* are defined as economic loss. Using this distinction, they allow recovery under negligence and strict liability theories for damage to the defective product itself when the damage was caused by an unreasonably dangerous defect.

At least one jurisdiction which has expressed approval of *Seely* uses a different method of defining economic loss. In *Mid Continent Aircraft Corp. v. Curry County Spraying Serv.,* 572 S.W.2d 308, 313 (Tex.1978), the Texas Supreme Court defined economic loss as damage to the defective product itself when no personal injury or other property damage is caused by the defective product. The Court made no distinction between unreasonably dangerous defects and less dangerous defects.

Defendant insists that the Court in *Superwood* adopted the same rule Texas adopted, even though *Superwood* does not cite the *Mid Continent Aircraft Corp.* decision. Plaintiff distinguishes *Superwood* because the defective window-washing unit created an unreasonable danger to persons or other property. Plaintiff argues that the Supreme Court's approval of *Seely* requires adoption of the majority's definition of economic loss.

While we believe that the public policy considerations of imposing an obligation on manufacturers to produce safe products regardless of whether the impact of the hazard is on people or property support plaintiff's position, we cannot distinguish this

---

**1.** Delaware, in *Cline v. Prowler Industries of Maryland, Inc.,* 418 A.2d 968 (Del.1980), takes a third position holding that the U.C.C. completely preempts the area of products liability. This position has not been adopted by other jurisdictions.

**2.** *See, e.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165 (3rd Cir. 1981) (applying Pennsylvania law); *Cloud v. Kit Mfg. Co.,* 563 P.2d 248 (Alaska 1977); *Moorman Mfg. Co. v. Nat'l Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982).

case from *Superwood.* Plaintiff Superwood Corp. sued defendant for failure of a hot plate press under several theories, including negligence and strict products liability theories. Plaintiff claimed damages for the damage to the press and for lost profits.

A cause of action for strict products liability necessarily entails an allegation that the product defect created an unreasonable danger. *Halvorson v. American Hoist & Derrick Co.,* 307 Minn. 48, 55, 240 N.W.2d 303, 307 (1976); see Comment, 1 Wm. Mitchell L.Rev. 207, 217 (1974). Since a strict products liability cause of action was pled in *Superwood,* we must assume the Supreme Court viewed the defect as unreasonably dangerous when it decided the case. Therefore, plaintiff's attempt to distinguish *Superwood* fails, but we urge the Supreme Court to consider a clarification of "economic loss" in any further application of *Superwood.*

### DECISION

We must conclude that the Supreme Court in *Superwood* intended to deny recovery for damage only to a defective product itself, even when the defect creates an unreasonable danger to persons or other property.

Affirmed.