AMERICAN HOME ASSURANCE CO.,
Arkwright-Boston Manufacturers Mutual Insurance Co., Monarch Insurance Co. of Ohio, Edison International, Inc., and Turbodyne Corporation, Appellants,

v.

MAJOR TOOL AND MACHINE, INC.,
Birdsboro Corporation, Appellees.

Nos. 84–5232 to 84–5234.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1985.

Decided July 8, 1985.

Stephen C. Fitch, Columbus, Ohio, for appellants.

Michael A. Trittipo and Robert E. Salmon, Minneapolis, Minn., for appellees.

Before McMILLIAN and FAGG, Circuit Judges, and WOODS,[*] District Judge.

HENRY WOODS, District Judge.

## I. BACKGROUND

This is a Minnesota diversity case in which the appellant insurers of Turbodyne, Inc. seek subrogation against Major Tool and Machine, Inc. and Birdsboro Corporation, appellees. Turbodyne was the assembler of a turbine which it contracted to supply to the Missouri Basin Municipal Power Agency. The inner housing for the turbine was supplied to Turbodyne by Major Tool and the turbine case by Birdsboro under subcontracts. As a result of a dimensional deviation by appellees from the contract drawings supplied by Turbodyne, a wear pin became disengaged, entered the air stream, and came in contact with other components of the product. A costly and unfortunate result was extensive damage to the moving and stationary turbine vanes and blades. For the purpose of the appeal, these facts are admitted. The sole issue is whether American Home Assurance, Turbodyne's carrier, can maintain this action in strict tort liability or negligence. If it is relegated to the law of sales and contract and must seek relief only under contract law or under the warranties of the Uniform Commercial Code, the claim is barred by limitations.[1] The District Judge[2] granted summary judgment. We affirm.

---

[*] The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

[1.] All parties conceded in the trial court that the breach of contract claim is barred by limitations. Limitation on the breach of warranty claim runs from the time of delivery of the components. Minn.Stat. § 336.2–725(2) (1982). Appellants concede that the warranty claim is also barred.

[2.] The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

## II. THE STRICT LIABILITY AND NEGLIGENCE CLAIM

This case brings into sharp focus a long-standing controversy in the law of product liability. Should strict liability in tort apply to economic loss? The California and New Jersey courts, which have been the principal contributors to the development of the theory of strict liability in tort,[3] have given diametrically opposite answers to this question.

In *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), the plaintiff-purchaser claimed economic losses from the manufacturer of a truck alleging that it bounced violently and its brakes were defective. The California Supreme Court refused to apply the strict liability doctrine to economic loss. "The history of the doctrine of strict liability in tort indicates that it was designed, not to undermine the warranty provisions of the sales act of the Uniform Commercial Code, but rather to govern the distinct problem of physical injuries." 45 Cal.Rptr. at 21, 403 P.2d at 149. *Santor v. A and M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965) reached an opposite result. The New Jersey Supreme Court permitted the plaintiff to sue a manufacturer in strict liability for economic loss occasioned by the purchase of defective carpeting from a retailer. The court refused to circumscribe the theory "because loss of value of the article sold is the only damage resulting from the breach." 207 A.2d at 309. These opposite views as to the ambit of strict liability in tort enunciated by the courts most responsible for the theory have brought about a definite split in the authorities. In this case we are bound by Minnesota law, and the Minnesota court in *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981) has explicitly aligned itself with the philosophy of California as expressed in *Seely v. White Motor Co., supra.*

The plaintiff in *Superwood* purchased a hot plate press manufactured by defendant. After a cylinder failed and the press could not be repaired, plaintiff sued in federal court in negligence, strict product liability, breach of warranty, and breach of contract—the same theories employed here. On the basis of limitation, the federal court dismissed the contract and warranty claims by summary judgment, as in the case at bar. It then certified the viability of the strict liability and negligence claims to the Supreme Court of Minnesota. In an opinion we consider dispositive of the case at bar, the Minnesota court held that these claims could not be maintained. "Although this is a case of first impression in Minnesota, this court has already demonstrated its approval of *Seely* in *Farr v. Armstrong Rubber*, 288 Minn. 83, 179 N.W.2d 64 (1970)." 311 N.W.2d at 161–62. The court pointed out that the Uniform Commercial Code clarifies the rights and remedies of parties to commercial transactions. To allow tort liability in such transactions would emasculate the limitation, notice, and disclaimer provisions of the UCC. "For these reasons we hold that economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability." *Id.* at 162.

Appellant seeks to avoid the force of *Superwood* by claiming that here "other property" (the vanes and blades of the turbine) was damaged by the defective components and that the above quotation from *Superwood* excludes damage to "other property" from its holding. We are not impressed by this argument. We believe that when *Superwood* speaks of damage to "other property," it means such damage as

---

**3.** The genesis of the doctrine of strict tort liability is to be found in Judge Traynor's decisions in *Escola v. Coca Cola Bottling Co.*, 24 Cal.2d 453, 150 P.2d 436 (1944), *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963), and *Vandemark v. Ford Motor Co.*, 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964), along with the opinion of Judge Francis in *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960). Minnesota adopted strict liability in *McCormack v. Hankscraft Co.*, 278 Minn. 322, 154 N.W.2d 488 (1967).

would have occurred in *Seely*, if the truck's defective brakes had caused it to run into and damage a home. We do not believe that Minnesota would apply this term to damages to a single product fabricated under a series of subcontracts.

Our view is supported by a series of decisions subsequent to *Superwood*. In *Minnesota Society of Fine Arts v. Parker-Klein*, 354 N.W.2d 816 (Minn.1984) the question was whether in a commercial transaction a purchaser of allegedly defective brick (Minnesota Society of Fine Arts) could recover in negligence or strict liability from defendant brick manufacturer the cost of repairing and replacing a portion of the structure in which the brick was incorporated. Plaintiff's claims based on negligence and strict liability were dismissed. "To hold that buildings constitute 'other property' would effectively overrule *Superwood* as to every seller of basic materials such as concrete, brick or steel because the 'other property' exception would always apply. The UCC provisions as applicable to component suppliers would be totally emasculated." *Id.* at 820.

The issue in *St. Paul Fire & Marine Ins. v. Steeple Jac*, 352 N.W.2d 107 (Minn.App. 1984) was stated by the court as follows: "May plaintiff recover under strict liability and negligence theories for damage to a product caused by a defect in the product itself when the defect causes no personal injury or damage to other property?" The court answered in the negative, stating that "we cannot distinguish this case from *Superwood*." *Id.* at 109. The facts are closely akin to the instant case. A window washing unit fell from the owner's building because of a defective gear box. As in this case, the insurance carrier sued the component manufacturer in negligence and strict liability. *See also Tri-State Ins. Co. v. Lindsay Bros. Co.*, 364 N.W.2d 894 (Minn. App.1985) for a similar holding.

## III. NEGLIGENCE IN PERFORMING CONTRACT

Appellants also argue that a cause of action exists for a negligent tort in that appellees did not use due care in performing the contract (i.e. in failing to accurately follow the drawings furnished by Turbodyne). Such a cause of action in Minnesota was recently rejected in *Lesmeister v. Dilly*, 330 N.W.2d 95 (Minn.1983). "Any duties between the parties arose out of contracts, about which there was opportunity to bargain and allocate risks and duties. This was not a situation in which parties were fortuitously brought together, as in an automobile accident. We conclude, therefore, that it was error to submit the theory of 'negligent breach' of contract to the jury ...." *Id.* at 102. In addition *see City of East Grand Forks v. Steele*, 121 Minn. 296, 141 N.W. 181 (1913) in which the court held that "where the gist of the action is the breach of the contract, either by misfeasance or nonfeasance ... the foundation of the action is the contract." *Id.* 141 N.W. at 182. *See also D & A Development Co. v. Butler*, 357 N.W.2d 156 (Minn. App.1984). "To prevail in negligence, a plaintiff must prove as one element that the defendant breached 'some duty imposed by law,' not merely one imposed by contract." *Id.* at 158.

## IV. THE CROSS APPEAL

The appellees cross appealed on the ground that the turbine constituted an improvement to real property and thus came within the Minnesota two-year statute of limitation. Minn.Stat. § 541.051(1) (1982). Our disposition of this case renders the cross appeal moot.

The judgment of the district court granting summary judgment is affirmed on the direct appeal.