825 F.2d 925
 1988 A.M.C. 2035, 5 UCC Rep.Serv.2d 59,
Prod.Liab.Rep.(CCH)P 11,526
 SHIPCO 2295, INC., Shipco 2296, Inc., Shipco 2297, Inc.,
Shipco 2298, Inc., and SPC Shipping, Inc.,
Plaintiffs-Appellants,
v.
AVONDALE SHIPYARDS, INC., and Allgemeine Elektricitats
Gasellschaft Telefunken, Defendants-Appellees.
 No. 86-3305.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 28, 1987.
 
 Antonio J. Rodriguez, J. Barbee Winston, Sean F. Murphy, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for plaintiffs-appellants.
 John V. Baus, Michael A. Chernekoff, Jones, Walker, Waecther, Poitevent, Carrere & Denegre, New Orleans, La., for Avondale.
 John P. Hammond, John C. Person, Montgomery, Barnett, Brown, & Read, New Orleans, La., for Allgemeine.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before POLITZ, JOHNSON and DAVIS, Circuit Judges.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 Appellants challenge the district court's dismissal of their action against Avondale Shipyards, Inc. (Avondale) and Allgemeine Elektricitats Gasellschaft Telefunken (AEG) for damage to appellants' vessels resulting from construction defects. 631 F.Supp. 1123. We affirm.
 
 I.
 
 2
 Standard Oil Company of Ohio (SOHIO) entered into six separate but identical contracts with Avondale for the construction of six tankers bearing Avondale Hull Nos. 2295-2300. Defects in four of those tankers bearing Hull Nos. 2295-2298 are at issue in this litigation.
 
 
 3
 In 1977, SOHIO assigned its rights under the construction contracts to a trust. The trustee, as shipowner, entered into separate bareboat charters for each of the vessels. The chartering entities were four Shipco companies, each named according to the tanker hull number they represent; under the bareboat charter the trustee assigned its rights under the construction contracts to each Shipco company. A long-term time charter for each of the four vessels was simultaneously executed between each Shipco company, as charter-owner, and SPC Shipping, Inc., as time charterer.
 
 
 4
 Avondale designed, assembled, and constructed the vessel hull and all vessel systems relevant to this litigation except the steering system, which was designed by AEG. Avondale purchased the steering system design from AEG, assembled the AEG designed system, and incorporated it into the vessels.
 
 
 5
 SOHIO accepted delivery of the four vessels in question between 1977 and 1978. The warranty periods for each of the four vessels expired on the following dates:
 
 
 6
 Hull No. 2295 (S/T ATIGUN PASS)--December 11, 1978; Hull No. 2296 (S/T KEYSTONE CANYON)--Feb. 27, 1979; Hull No. 2297 (S/T BROOKS RANGE)--May 12, 1979; and Hull No. 2298 (S/T THOMPSON PASS)--September 8, 1979.
 
 
 7
 Upon expiration of the warranty period, various repair items remained unresolved. SOHIO and Avondale continued negotiations in an attempt to resolve SOHIO's warranty claims; on December 9 and 10, 1981, an agreement was reached. The agreement between the parties confirmed "full and final settlement of all ASI [Avondale] obligations under the contract for Hulls 2295, 2296, 2297 and 2298" and "final settlement of the construction contracts."
 
 
 8
 After the settlement was bound, appellants assert that various defects in the vessels came to their attention. On December 11, 1981, a casualty occurred on the S/T ATIGUN PASS. Shipco contends that faulty casting of the propeller caused the propeller blades to break off which in turn damaged the rudder and line shaft assembly. In the spring and summer of 1982, structural fractures in hull members appeared on all four vessels. Shipco alleges that the fractures resulted from Avondale's improper design and construction of brackets which permitted vibrations to radiate from the bracket connection to the hull members. Two of the vessels also experienced damage to their steering systems. Shipco alleges that this damage stemmed from a defectively designed or manufactured cap screw which sheared off, damaging the steering gear engine along with pumps and valves in the hydraulic system.
 
 
 9
 Shipco sought recovery of its repair costs from Avondale and AEG under both warranty and tort theories. The time charterer of the vessels, SPC Shipping, sought to recoup from Avondale and AEG on tort and warranty theories the charter hire it was required to pay while the vessels were laid up for repairs.
 
 
 10
 The district court, ruling on Avondale's motion for summary judgment and AEG's motion for judgment on the pleadings, held that: (1) all of Shipco's warranty claims arising out of the vessel's construction were barred by the 1981 settlement agreement between SOHIO and Avondale; (2) plaintiffs had no maritime tort cause of action as a matter of law; and (3) SPC Shipping's claims as a time charterer are barred by Robins Drydock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), and its progeny. The district court entered judgment in favor of Avondale and AEG and dismissed appellants' suit.
 
 II.
 A.
 
 11
 On appeal, Shipco and SPC do not contest the district court's denial of relief to them on a warranty theory. The critical issue, on which this appeal turns, is whether the district court erred in rejecting appellants' claims in tort against Avondale and AEG.
 
 
 12
 The issue presented by this appeal can be stated as follows: Is Avondale, as the vessel builder and seller, or AEG, as the designer of a component part of the vessels, liable to the appellants in tort under the general maritime law for damage to the vessels themselves due to vices in their construction? Fortunately, the United States Supreme Court in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), decided most, if not all, of the questions presented in this appeal.
 
 
 13
 In East River, Seatrain Shipbuilding Corp. (Shipbuilding) contracted to construct four tankers for four separate subsidiaries of the parent company, Seatrain Lines, Inc. (Seatrain). Shipbuilding in turn contracted with respondent, Transamerica Delaval, Inc. (Delaval) to design, manufacture, and supervise the installation of turbines in all four vessels. When each vessel was completed its title was transferred from the contracting subsidiary to a trust company which in turn chartered the ship to four separate Seatrain subsidiaries which filed the initial action. Each bareboat charterer assumed responsibility for the cost of repairs to the vessels. Three of the vessels sustained turbine damage in varying degrees resulting from disintegration of the first-stage steam reversing ring. The fourth vessel, the BAY RIDGE, also experienced turbine damage as a result of the improper installation of the astern guardian valve.
 
 
 14
 As in the instant case, the plaintiffs in East River were unable to establish their claims predicated on breach of warranty because of waiver of warranty in the sales instruments and later settlement of the warranty claims. As a result, the Court stated the question to be decided as follows: "In this admiralty case, we must decide whether a cause of action in tort is stated when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." Id., at ----, 106 S.Ct. at 2296, 90 L.Ed.2d at 869. The Court, after considering the various approaches to this problem adopted by various state and federal courts adopted the majority land-based view "that a manufacturer in a commercial relationship has no duty under a negligence or strict products-liability theory to prevent a product from injuring itself." Id. at ----, 106 S.Ct. at 2302, 90 L.Ed.2d at 877. The Court reasoned that:
 
 
 15
 Damage to a product itself is most naturally understood as a warranty claim. Such damage means simply that the product has not met the customer's expectations, or, in other words, that the customer has received "insufficient product value."... The maintenance of product value and quality is precisely the purpose of express and implied warranties.... Therefore, a claim of a nonworking product can be brought as a breach-of-warranty action. Or, if the customer prefers, it can reject the product or revoke its acceptance and sue for breach of contract.
 
 
 16
 Id., at ----, 106 S.Ct. at 2303, 90 L.Ed.2d at 877-78. Because the plaintiffs sought recovery in tort for damage to the product itself, the Court rejected their claims.
 
 
 17
 The Court, in adopting this view, effectively overruled our own law on the subject articulated in Jigg, III, Corp. v. Puritan Marine Ins. Underwriters Corp., 519 F.2d 171 (5th Cir.1975), in which we held that: "Under the general maritime law a manufacturer/seller owes a purchaser with whom it is in direct and elaborate contractual relationship regarding a product a free-floating duty not to produce a negligently-constructed or designed product.... [T]he manufacturer owes the purchaser (in direct contractual relationship) a duty to produce a product so negligence-free that it cannot harm itself." Id. at 180. The position adopted by the Supreme Court in East River is generally consistent with Judge Gee's dissent in Jigg, III where he stated:
 
 
 18
 I would hold that the general maritime law should not and does not recognize a tort based product-liability cause of action based either on negligence or strict manufacturer liability when there is privity and when the only loss suffered results from damage to the defective product itself. In holding that it does, we simply withdraw from the parties, and after the fact, a portion of the freedom to contract which the codifiers meant them to keep.
 
 
 19
 Id. at 181.
 
 B.
 
 20
 Shipco and SPC Shipping argue that the district court erred in dismissing their actions against Avondale because defects in certain components of each vessel caused damage to unrelated components in the same vessel.[1] Appellants argue that the resulting damage represents damage to "other property" and East River recognizes a purchaser's right to recover economic losses resulting from damage to the product, in tort, when the defect in the product causes damage to other property.
 
 
 21
 In applying the rule adopted by East River, that one party to a commercial transaction cannot recover in tort for economic loss that arises from damage to the product itself but may recover for such loss that arises from damage to "other" property, appellants' argument raises the question--what is the product?
 
 
 22
 In attempting to identify the product, our analysis leads us to ask what is the object of the contract or bargain that governs the rights of the parties? The completed vessels were obviously the objects of the contract. Shipco[2] did not bargain separately for individual components of each vessel. We are persuaded that those same vessels that were the object of the contract must be considered "the product" rather than the individual components that make up the vessels.
 
 
 23
 The underlying reason the Court in East River denied a tort cause of action to the purchaser for economic loss resulting from damage to the vessel was because such losses represent "the failure of the purchaser to receive the benefit of its bargain--traditionally the core concern of contract law." 476 U.S. at ----, 106 S.Ct. at 2302, 90 L.Ed.2d at 876. Acceptance of Shipco's argument that it should have a tort remedy against Avondale would undermine this central objective of East River that the parties receive the benefit of their bargain.
 
 
 24
 In East River, the vessel owner made the same argument in its suit against the turbine supplier, Delaval, that Shipco makes in the instant case. The turbine damage was caused in three of the vessels from the disintegration of a ring. The turbine damage in the fourth vessel resulted from improper installation of a valve. The court rejected the shipowner's argument that the resulting damage to the turbine should be considered damage to "other property": " 'Since all but the very simplest of machines have component parts, [a contrary] holding would require a finding of "property damage" in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability.' " East River, at ----, 106 S.Ct. at 2300, 90 L.Ed.2d at 874 (relying on Air Lift Int'l, Inc. v. McDonnell Douglas Corp., 585 F.2d 267 (9th Cir. 1982); Aeronaves de Mexico v. McDonnell Douglas Corp., 677 F.2d 771 (9th Cir. 1982); Minnesota Society of Fine Arts v. Parker-Klein, 354 N.W.2d 816 (Minn.1984); Tri-State Ins. Co. v. Lindsay Bros., Co., 364 N.W.2d 894 (Minn.App.1985); St. Paul Fire and Marine Ins. v. Steeple Jac, 352 N.W.2d 107 (Minn.App.1984)).
 
 
 25
 Shipco cites no authority in support of its position that a defect in one component of the item sold that causes damage to unrelated components of that item constitutes damage to "other property"; and our own research has uncovered no authority to support this argument. A number of jurisdictions, however, have rejected Shipco's argument. James v. Bell Helicopter Co., 715 F.2d 166 (5th Cir.1983) (applying Texas law); Flintkote Co. v. Dravo Corp., 678 F.2d 942 (11th Cir.1982) (applying Georgia law); Air Lift Int'l, Inc. v. McDonnell Douglas Corp., 685 F.2d 267 (9th Cir.1982) (applying California law); Scandinavian Airlines Syst. v. United Aircraft Corp., 601 F.2d 425 (9th Cir.1979) (applying California law); Mid-Continent Aircraft Corp. v. Curry County Spraying Serv., Inc., 572 S.W.2d 308 (Tex.1978); Tri-State Ins. Co. v. Lindsay Brothers Co., 364 N.W.2d 894 (Minn.App.1985); Cedars of Lebanon Corp. v. European X-Ray Distrib., Inc., 444 So.2d 1068 (Fla.App.1984); Henderson v. General Motors Corp., 152 Ga.App. 63, 262 S.E.2d 238 (1979); Long v. Jim Letts Oldsmobile, Inc., 135 Ga.App. 293, 217 S.E.2d 602 (1975).
 
 
 26
 We conclude therefore that the district court correctly dismissed this action against Avondale. Avondale sold the completed vessels to Shipco. The damage sought by appellants--repair costs and loss of profits--are the same type damage the Court in East River characterized as economic losses. East River teaches that such economic loss for damage to the product bargained for, the vessels in this case, cannot be recovered in tort.
 
 C.
 
 27
 The argument of Shipco and SPC Shipping that they are entitled to a tort recovery against AEG is also predicated on the "other property" exception recognized by East River.
 
 
 28
 Shipco alleged that Avondale purchased the design of the hydraulic steering system from AEG; Avondale then fabricated and installed the AEG-designed system in the vessels. Shipco asserts that a capscrew in the steering system sheared off and caused extensive damage to the steering gear engine, the pump in the steering gear hydraulic power units, and the valves in the steering gear hydraulic system. Shipco contends that we must assume that the steering gear engine, pumps, and valves are independent of the system designed by AEG and the damage to that equipment is damage to "other property."
 
 
 29
 Because we cannot determine from the pleadings in this case whether the steering gear engine or the hydraulic pumps and valves are within the scope of the system designed by AEG, we assume for purposes of this opinion that they are not.
 
 
 30
 In considering Avondale's liability to appellants, we rejected Shipco's contention that damage sustained to one component of the vessel caused by a defect in a different component of the vessel represented damage to "other property." We reasoned that as to Avondale, which assembled the entire vessel, the "product" was the finished vessel rather than the components of the vessel. Shipco's argument against AEG requires that we consider whether we should reach a different result as to AEG because its contribution to the vessels was limited to a single component, the steering system.
 
 
 31
 We see no rational reason to give the buyer greater rights to recover economic losses for a defect in the product because the component is designed, constructed, or furnished by someone other than the final manufacturer. The buyer ordinarily has no interest in how or where the manufacturer obtains individual components. The buyer is usually interested in the quality of the finished product and is content to let the manufacturer decide whether to do all the work or delegate part of it to others.
 
 
 32
 We are persuaded that the reasons given above for our conclusion that, as to Avondale, the finished vessel is the product, support a similar conclusion as to AEG. The critical fact that Shipco bargained for a finished vessel remains unchanged. Acceptance of Shipco's argument that it can assert a tort claim against AEG would undermine the objective of East River that the parties receive the benefit of their bargain. This is particularly true in this case where Shipco bargained with Avondale for the warranty the subcontractors and component suppliers would furnish.[3]
 
 
 33
 Permitting a buyer to assert a tort claim against a subcontractor or component supplier may also implicate the seller; the supplier or subcontractor who is sued in tort can be expected to assert indemnity or contribution claims against the seller which assembled the product and incorporated the supplier's component or work in the finished product. The effect of such a claim, if successful, would visit ultimate tort liability for defects in the vessel on the manufacturer and seller and would nullify the objective of East River to limit the seller's liability in this type case to that assumed by contract.
 
 
 34
 Several cases decided by the Eighth and Ninth Circuits under Minnesota and California law support the view that the product in this context means the finished product bargained for by the buyer rather than components furnished by a supplier. American Home Assurance Co. v. Major Tool & Machine, Inc., 767 F.2d 446 (8th Cir.1985). Scandinavian Airlines System v. United Aircraft Corp., 601 F.2d 425 (9th Cir.1979); Air Lift International, Inc. v. McDonnell Douglas, Corp., 685 F.2d 267 (9th Cir.1982); Aeronaves de Mexico v. McDonnell Douglas Corp., 677 F.2d 771 (9th Cir.1982). At least one court has held to the contrary. See Mike Bajalia, Inc. v. Amos Constr. Co., 142 Ga.App. 225, 235 S.E.2d 664, 665 (1977).
 
 
 35
 For reasons stated above, we are persuaded that the view expressed by the Eighth and Ninth Circuits, applying Minnesota and California law, is more compatible with the teaching of East River and we adopt that view. We therefore conclude that the district court correctly dismissed Shipco and SPC Shipping's action against AEG.[4]
 
 III.
 
 36
 Because the district court correctly dismissed appellants' action, its judgment is
 
 
 37
 AFFIRMED.
 
 
 
 [1]
 Appellants contend that faulty casting of the propeller on the ATIGUN PASS caused the propeller blades to break off which in turn damaged the rudder and line shaft assembly. Appellants also argue that defective brackets on all four vessels permitted vibrations and caused stress fractures in hull members. On two of the vessels, appellants allege that defective cap screws in the steering system sheared off and damaged the steering gear engine along with pumps and valves in the steering gear hydraulic system
 
 
 [2]
 As stated in part I of this opinion, all rights SOHIO acquired in the construction contracts with Avondale were assigned to the relevant Shipco company. Because the Shipco companies as assignees hold the same rights under those contacts as SOHIO, for purposes of this opinion we simply refer to Shipco as the purchaser
 
 
 [3]
 The pertinent portion of the agreement between SOHIO and Avondale provides:
 The provisions set forth herein as to the liability of the Builder hereunder are to apply also to each and every item of material and workmanship furnished by subcontractors or vendors in Builder's performance of this Contract. Builder also assigns to Purchaser any warranties or rights that it may have with respect to its subcontractors and suppliers and shall assist Purchaser in securing performance thereunder.
 
 
 [4]
 The appellants assert several additional arguments: (1) the district court failed to give them adequate notice and an opportunity to present evidence on the extent of the damage to the vessels; (2) the disclaimers in the construction contract do not preclude a maritime tort action; (3) appellants did not release appellees from tort liability in the settlement agreement; and (4) SPC Shipping has a proprietary interest in the four vessels and its assertion of that action against Avondale is not incompatible with Robins. Our conclusion that appellants may not assert a maritime tort action in this case to recover for economic loss to the purchased vessels makes consideration of these arguments unnecessary