## CHOUEST OFFSHORE SERVICES, LLC

v.

## SUPERIOR ENERGY SERVICES, LLC in personam and the L/B Superior Gale, in rem

No. CIV.A. 04–0446, 04–0474.

United States District Court, E.D. Louisiana.

July 15, 2005.

Michael H. Bagot, Jr., Wagner & Bagot, New Orleans, LA, for Chouest Offshore Services, L.L.C., Plaintiff.

Paul S. Balanon, Paul Balanon, Attorney at Law, Washington, DC, for Fireman's Fund Insurance Company, St. Paul Insurance Company, Consol Third Party Defendants.

Laurence R. DeBuys, IV, Reich, Meeks & Treadaway, LLC (Mandeville), Mandeville, LA, for Bollinger Shipyards Lockport, L.L.C., Third Party Defendant.

Horace F. Foster, III, Bienvenu, Foster, Ryan & O'Bannon (Baton Rouge), Baton

Rouge, LA, for Sotec LLC, Third Party Defendant.

Kevin Eino Gronberg, Wagner & Bagot, LLP, New Orleans, LA, for Chouest Offshore Services, L.L.C., Plaintiff.

John Frederick Kessenich, Daigle Fisse, PLC, Covington, LA, for Superior Energy Services, LLC, Third Party Plaintiff.

Robert Perry McCleskey, Jr., Phelps Dunbar, LLP, New Orleans, LA, for Chouest Offshore Services, L.L.C., Plaintiff.

Evans Martin McLeod, Phelps Dunbar LLP (Houston), Houston, TX, for Chouest Offshore Services, L.L.C., Plaintiff.

Michael William McMahon, Daigle Fisse, PLC, Covington, LA, for Superior Energy Services, LLC, Third Party Plaintiff.

William E. O'Neil, The O'Neil Group, LLC, New Orleans, LA, for Fireman's Fund Insurance Company, St. Paul Insurance Company, Consol Third Party Defendants.

Lawrence R. Plunkett, Jr., Reich, Meeks & Treadaway, Metairie, LA, for Bollinger Shipyards Lockport, L.L.C., Third Party Defendant.

Thomas Arnoult Rayer, Jr., Wagner & Bagot, New Orleans, LA, for Chouest Offshore Services, L.L.C., Plaintiff.

Robert Seth Reich, Reich, Meeks & Treadaway, Metairie, LA, for Bollinger Shipyards Lockport, L.L.C., Third Party Defendant.

James H. Roussel, Baker Donelson Bearman Caldwell & Berkowitz, PC, New Orleans, for International Marine Systems, LLC, Third Party Defendant.

Louis G. Spencer, Emmett, Cobb, Waits & Kessenich (Covington), Covington, LA, for Superior Energy Services, LLC, Third Party Plaintiff.

Susan Molero Vance, The O'Neil Group, LLC, New Orleans, LA, for Fireman's Fund Insurance Company, St. Paul Insurance Company, Consol Third Party Defendants.

John William Waters, Jr., Bienvenu, Foster, Ryan & O'Bannon, New Orleans, LA, for Sotec LLC, Third Party Defendant.

PORTEOUS, District Judge.

Before the Court is a Motion for Summary Judgment (Doc. 45) filed on behalf of the Bollinger Shipyards, LLC ("Bollinger"). The parties waived oral argument and the matter was taken under submission on April 20, 2005. The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

### ORDER AND REASONS

## I. BACKGROUND

During years 2001 and 2002, Bollinger constructed L/B SUPERIOR GALE pursuant to a November 2, 2000 Vessel Construction Agreement with Cardinal Services, Inc., predecessor in interest to Superior Energy Services, LLC ("Superior"). The vessel was delivered to Superior in December 2002. Superior placed the vessel into service shortly thereafter.

When the vessel was placed into service, Superior experienced problems with a malfunctioning low fuel/low oil pressure alarm and Bollinger agreed to fix the alarm. On or about February 17, 2003, a subcontractor of Bollinger, International Marine Systems, LLC ("IMS"), allegedly repaired the malfunctioning alarm.

On February 19, 2003, while the SUPERIOR GALE was in route between the shipyard in Lake Charles, Louisiana and a shipyard in Fourchon, Louisiana, a fire erupted in the lift boat's starboard engine room causing major damage. The fire was

fought by GALE's crew using its own equipment and equipment provided by the vessel C–ADVENTURER, owned by Chouest Offshore Services, LLC ("Chouest"), which was called by GALE for assistance. The GALE was subsequently towed by the C–ADVENTURER until it passed to another towage vessel hired by Superior. The SUPERIOR GALE remained out of service for an extended period after the accident awaiting repairs.

Superior filed suit against International Marine Systems ("IMS") for its alleged fault in causing the fire and against Stoec, LLC for the alleged failure of its CO2 system to suppress the fire. Superior also joined Bollinger as a defendant, asserting various allegations of fault regarding the construction of the vessel.

In the action entitled *Superior Energy Services, LLC, et al v. International Marine Systems, LLC, et al,* Civil Action No. 04–0474 "D"(3), Superior seeks recovery of consequential damages including "loss of use, cover expenses, business interruption, loss of profit and other damages directly related to the aforementioned failure(s)..." The Complaint also identifies damages as "repair costs of the L/B SUPERIOR GALE and appurtenant equipment; transportation expenses; survey fees; investigative expenses; cost of substitute equipment; loss of revenue; salvage expenses; and loss of profits..."

In a related manner, Chouest filed suit against Superior and SUPERIOR GALE seeking salvage for the services rendered by the C–ADVENTURER at the request of the GALE's crew. That action is entitled *Chouest Offshore Services, LLC v. Superior Energy Services, LLC, et al,* Civil Action No. 04–0446 "T"(4) (the lead case). Superior filed a Third Party Complaint in the Chouest action against Bollinger tendering Bollinger as a direct defendant to Chouest pursuant to Rule 14(c) of the Federal Rules of Civil Procedure. Through this pleading, Superior attempts to obligate Bollinger for damages "based upon the hourly towing rate for the C–ADVENTURER, the estimated fair market value of the L/B SUPERIOR GALE, and other reasonable value of award placed by this Honorable Court on the lives saved."

Bollinger has answered the Original Complaint and Third Party Complaint denying responsibility. Bollinger now seeks partial summary judgment dismissing Superior's claims for consequential damages and tort damages from Bollinger, asserting that the Vessel Construction Agreement between Bollinger and Superior prohibits the recovery of consequential damages and that maritime law prohibits recovery in tort for alleged improper construction of a vessel. Superior opposes Bollinger's motion, arguing that the Louisiana Products Liability Act, La. R.S. 9:2800.51 *et seq.* ("LPLA") provides them a tort cause of action against Bollinger, that the LPLA specifically permits recovery of consequential damage in tort by Superior, irrespective of whether Superior may recover consequential damages in contract and that the U.C.C. and the general maritime law do not apply to the non-maritime Vessel Construction Agreement or Superior's claim under the LPLA. In addition, Chouest opposes the motion in an effort to preserve its right to pursue a salvage claim against Bollinger.

## II. LAW AND ANALYSIS OF THE COURT

### A. Rule 56 Summary Judgment

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655–56 (5th Cir.1996) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912–13 (5th Cir.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588, 106 S.Ct. 1348. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**B.   Analysis of the Court**

First, this Court finds that Chouest's Opposition to Bollinger's Motion for Summary Judgment has no bearing on the claims which are the subject of this motion. Bollinger did not file a Motion for Summary Judgment regarding the salvage claim, which Chouest seeks to pursue directly against Bollinger by virtue of Superior's Rule 14(c) tender. Accordingly, this Court will not address the merits of Chouest's opposition motion at this time.

With respect to the claims between Bollinger and Superior, Bollinger argues that it is clear from the Vessel Construction Agreement, signed by both parties, that recovery of consequential damages is prohibited and that the extent of Bollinger's liability is the cost of repair. Therefore, they submit that Superior's claim for consequential damages including, but not limited to, loss of use, loss of profits, survey expenses, towage and salvage, should be dismissed.

Bollinger relies on Articles 11 and 12 of the Vessel Construction Agreement, which preclude the recovery of consequential damages and tort remedies, limiting their liability to the payment of warranty repairs. The agreement states, in pertinent part:

> In no event shall Bollinger be responsible for an amount exceeding the cost of repairs or replacement and the performing of such additional work as may be required to remedy such defect or deficiency, it being specifically understood that Bollinger shall under no circumstances have any liability for any consequential damages...

Vessel Construction Agreement, Article 11.

The agreement further provides:

> In no event shall Bollinger be responsible for an amount exceeding the cost of the repairs or replacement and the performing of such additional work as may be required to remedy such defect or deficiency, it being specifically understood that Bollinger shall under no circumstances have any liability for any consequential damages...

Vessel Construction Agreement, Article 12.

To support its contention that the plaintiff's cause of action stemming from alleged improper construction of a vessel pursuant to a vessel construction contract sounds in contract, not in tort, Bollinger relies on *East River Steamship Corp., et al v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) and its progeny, *Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925 (5th Cir.1987).

In *East River*, an admiralty case, a shipbuilder contracted with Transamerica Delaval, Inc. to design, manufacture, and supervise the installation of turbines for use as the main propulsion units for four 225,000 ton oil-transporting supertankers to be constructed by the shipbuilder. *East River*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). After construction of the ships was completed and the tankers were operating, all four ships experienced malfunctions as a result of manufacturing and design defects in the turbines. Only the turbines themselves were damaged. The admiralty complaint was filed against Delaval under a products liability theory based on negligence. The issue before the United States Supreme Court was whether a cause of action in tort is stated when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic losses. *Id.* at 859, 106 S.Ct. 2295. The Supreme Court held that a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself. *Id.* at 871, 106 S.Ct. 2295. The Court further stated that contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. *Id.* at 872–873, 106 S.Ct. 2295. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. *Id.* at 873, 106 S.Ct. 2295. Because the plaintiffs sought recovery in tort for damage to the product itself, the Court rejected their claims.

The Fifth Circuit Court of Appeals in *Shipco* relied on *East River* to determine whether a vessel builder and seller, or designer of the component part of the vessels, was liable to the appellants in tort under the general maritime law for damage to the vessels themselves due to vices in their construction. *Shipco*, 825 at 927. In *Shipco*, the plaintiff, a party to several vessel construction contracts with Avondale, sued Avondale for improper design and construction of the vessels. The alleged defective design and construction caused the vessels to be removed from navigation while repairs were performed. Shipco sought recovery of its repair costs on both warranty and tort theories. It also asserted warranty and tort claims for recovery of a charter hire it was required to pay while the vessels were laid up for repairs. In the lower court, Avondale prevailed on a motion for summary judgment obtaining the dismissal of plaintiff's maritime tort cause of action as a matter of law. The Fifth Circuit affirmed, stating:

> We conclude therefore that the district court correctly dismissed this action against Avondale. Avondale sold the completed vessels to Shipco. The damage sought by appellants—repair costs and loss of profits—are the same type of damages the Court in *East River* characterized as economic losses. *East River* teaches that economic loss for damage to the product bargained for, the vessels in this case, cannot be recovered in tort.

*Shipco*, 825 at 929.

In opposition to Bollinger's Motion for Partial Summary Judgment, Superior ar-

gues that the Louisiana Products Liability Act ("LPLA") provides a tort cause of action against Bollinger, irrespective of whether Superior may recover consequential damage in contract. The LPLA provides in relevant part, "[t]his Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. Louisiana Revised Statute 2800.54(a) states:

> The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by a claimant or another person or entity.

La. R.S. 9:2900(A).

The elements set forth in section 2800.54(a) are:

1. The defendant is the manufacturer of the product;
2. The claimant's damage was proximately caused by a characteristic of the product;
3. This characteristic made the product unreasonably dangerous; and
4. The claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

For purposes of this motion, viewing all evidence in the light most favorable to the nonmoving party, the Court will assume that (1) Bollinger is the manufacturer of the SUPERIOR GALE; (2) the damages to the SUPERIOR GALE are attributable to Bollinger; (3) Superior will be able to show the improper construction, improper repairs, and/or improper design of Bollinger caused the SUPERIOR GALE to be unreasonably dangerous; and (4) Superior's damage arose from a reasonably anticipated use of the SUPERIOR GALE.

Relying primarily on *R–Square Investments, Inc. v. Teledyne Industries, Inc.,* Civ. No. 96–2978, 1997 WL 436245, *6 (E.D.La.1997) (Fallon, J), Superior contends that the LPLA permits tort recovery for damage for economic loss when redhibition remedies are foreclosed. In *R–Square*, Judge Fallon found persuasive the comments John Kennedy makes in his law review article on the subject of Louisiana's Products Liability law, *A Primer on the Louisiana Products Liability Act.* Judge Fallon referenced the following excerpt of Mr. Kennedy's law review article:

> Recovery for damage to the product itself or economic loss arising from a deficiency in or loss of use in the product will normally not be compensable under the LPLA, because those items of damage properly are the subject of a claim in redhibition for breach of implied warranty. If, however, a claimant cannot proceed in redhibition for some reason, he can recover his damages in redhibition under the LPLA.

*Id.* citing John Kennedy, *A Primer on the Louisiana Products Liability Act,* 49 La. L.Rev. 565, 580 (1989).

*R–Square,* however, is distinguishable from the instant case, in that the plaintiffs in *R–Square* sued the defendant in redhibition and under the Louisiana Products Liability Act. *Id.* at *1. In the case at hand, Superior invokes this Court's admiralty jurisdiction. Superior's Third Party Complaint states:

> This is an admiralty and maritime claim within the jurisdiction of the United States and of this Honorable Court within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and this Third Party Complaint is brought pursuant to Rule 14(c) of the Federal Rules of Civil Procedure.

(Superior's Third Party Complaint, Paragraph 11.) Superior's first mention of a

claim brought under the LPLA appears in its Opposition to Bollinger's Motion for Partial Summary Judgment.

Next, Superior contends that the Vessel Construction Agreement between Superior and Bollinger is a non-maritime contract governed by Louisiana law and that the "economic loss" doctrine adopted by the United State Supreme Court in *East River* for the general maritime law does not apply to their Louisiana state law claim against Bollinger. This argument, however, ignores not only the fact that Superior's claim invokes this Courts admiralty jurisdiction, but also the distinction between contract actions and tort actions:

> Contracts relating to the construction of vessels are not considered maritime contracts... Consequently, claims for breach of such contracts are not within the admiralty jurisdiction. However, tort claims for negligent construction or design of a vessel will lie in admiralty if the negligence constitutes a maritime tort...

*Employers Insurance of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 759, (5th Cir.1989), cert. denied, 493 U.S. 820, 110 S.Ct. 77, 107 L.Ed.2d 43 (1989), (citing *Jig The Third Corp. v. Puritan Marine Ins. Underwriters Corp.*, 519 F.2d 171, 174 (5th Cir.19975)).

It is clear that Superior is attempting to recover on a maritime tort, as was the plaintiff in *Suwannee*, because:

1. [T]he harm allegedly caused by the tort occurred on the high seas—meeting the locality requirement for admiralty jurisdiction; and

2. [T]hey occurred in the course of maritime commerce—satisfying the requirement that the tort bears a substantial relationship to the traditional maritime activities.

*Suwannee*, 866 at 759.

For the reasons stated above, this Court finds that the damages to SUPERIOR GALE are governed by maritime law and the economic loss rule of *East River*, not the Louisiana Products Liability Act. The Vessel Construction Agreement clearly and unequivocally precludes recovery of consequential damages and limits other recovery to contractually specified damages. Therefore, Superior cannot pursue a tort claim against Bollinger in this action and its tort claims are dismissed.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed on behalf of the Bollinger Shipyards, L.L.C., be and the same is hereby **GRANTED**.