[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 4, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-14828

_____

D.C. Docket No. 8:02-cv-850-T-17-TGW

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,

Plaintiff-Appellant,

versus

AMERICAN AVIATION, INC.,

Defendant-Appellee.

_____

No. 02-14830

_____

D.C. Docket No. 8:02-cv-851-T-17-TBM

PROFILE AVIATION SERVICES, INC.,

Plaintiff-Appellant,

versus

AMERICAN AVIATION, INC.,

Defendant-Appellee.

Appeals from the United States District Court
for the Middle District of Florida
_____

**(September 4, 2003)**

Before ANDERSON and BIRCH, Circuit Judges, and PROPST[*], District Judge.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO SECTION 25.031 OF THE FLORIDA STATUTES AND RULE 9.150 OF THE FLORIDA RULES OF APPELLATE PROCEDURE.

TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES.

Indemnity Insurance Company of North America ("Indemnity") and Profile Aviation Services, Inc., ("Profile") appeal from the dismissal of their tort claims in their separate complaints against American Aviation, Inc. ("American") by the United States District Court for the Middle District of Florida. The tort claims were dismissed on the basis that Florida's economic loss rule bars the claims. In deciding this case, we must determine whether the district court properly interpreted and applied Florida law. Because of substantial questions concerning the appropriate Florida law to be applied in this case, we certify those questions of law to the Supreme Court of Florida and postpone any further consideration of the consolidated appeals in this case until we receive answers from that court.

_____

[*]Honorable Robert B. Propst, United States District Judge for the Northern District of Alabama, sitting by designation.

*Summary Of Alleged Facts[1] And Applicable Regulations*

This action arises from the allegedly negligent maintenance and inspection of an aircraft's landing gear by American. All mechanics who work on aircraft must be FAA-certified. To become certified, a mechanic must graduate from a certified aviation maintenance technical school (or have equivalent practical experience) and must pass a written test on the construction and maintenance of aircraft, the federal regulations, and provisions governing mechanics. They must also pass an oral and a practical skills test. *See* 14 C.F.R. §§ 65.71, 65.75, 65.77, 65.79.

A FAA-certified mechanic who performs maintenance on an aircraft, airframe, engine, etc., must follow the methods, techniques, and practices prescribed in the aircraft's maintenance manual and perform the maintenance in such a manner that the condition of the aircraft will be at least equal to its original or properly altered condition. *See* 14 C.F.R. § 43.13. Moreover, when maintenance has been performed, a FAA-certified mechanic must give approval before the aircraft, airframe, etc. is returned to service. *See* 14 C.F.R. §§ 43.3, 43.7, 43.13. Before returning the aircraft to service, the certified mechanic must also make an entry into the aircraft's logbook regarding the inspection and maintenance performed. *See* 14 C.F.R. § 43.5. According to appellants, an aircraft owner relies on these records to determine, among other things, if the required maintenance has been performed, if the aircraft can be returned to service, and when the next maintenance is scheduled.

---

[1]Because these claims were dismissed for failure to state a claim, the appellants' factual allegations must be taken as true.

On or around November 22, 1996, American's FAA-certified mechanics, pursuant to a contract to which appellants are not parties,[2] performed the required 30-month end play maintenance and inspection on the landing gear of a Beechcraft KingAir 100 aircraft, registration N924RM ("Aircraft"). During the course of the inspection and repair, American's mechanics removed the Aircraft's right main landing gear actuator and lower thrust bearing. After completing the work, American's mechanics certified in the Aircraft's logbook that the work was done in accordance with the Aircraft's maintenance manual and FAA regulations.[3]

Profile purchased the Aircraft subsequent to American's November 1996 maintenance and inspection. Appellants contend that they reasonably relied upon American's representations in the logbook concerning the November 1996 work. On May 14, 1999, the Aircraft was severely damaged when the right main landing gear failed to extend during a landing. The alleged cause of the failed landing gear was that the lower thrust bearing of the right main landing gear actuator was installed backwards. Appellants contend that they could not have discovered American's alleged negligence prior to the accident.

*Proceedings In District Court*

On May 10, 2002, Indemnity, which was the Aircraft's insurer, and Profile filed separate four count complaints in the district court. Appellants sought to recover for

---

[2]There appears to be some confusion on this point. The district court's opinion (*see* Background) seems to indicate that there was a contract between the parties. The complaints suggest that the contract was between American and a subsidiary of Profile, but not Profile itself. All parties seem to agree that Profile was not a party to the contract.

[3]Some of the maintenance work may have been performed by a subcontractor of American.

negligence (Count I), negligence *per se* (Count II), negligent misrepresentation (Count III), and breach of warranty (Count IV). American moved to dismiss the complaints, arguing that Florida's economic loss rule barred the tort claims and that no breach of warranty action could be maintained because of a lack of privity between appellants and American. In a series of orders, the district court agreed with American and dismissed both complaints. The cases were consolidated for appeal.[4]

*Issues*

The issues are as follows:

(1) Whether the "economic loss" doctrine of Florida applies to alleged torts if the defendant has provided services to a product rather than has sold a product.

(2) Whether the "economic loss" doctrine of Florida applies if there is no contractual relationship between the plaintiffs and the defendant.

(3) Whether the "economic loss" doctrine of Florida applies to the facts of this case with regard to damage to the total aircraft as opposed to mere damage to the landing gear under the "other property" exception.

(4) Whether the providing of certified mechanical services falls under the category of the "professional services" exception to the "economic loss" doctrine of Florida or under some related services exception.

(5) Whether the negligent misrepresentation claim in this case provides an exception to the "economic loss" doctrine of Florida.

---

[4]It appears from the briefs that appellants have not appealed the dismissal of the breach of warranty claim. For the purposes of this certification, we consider the interests of Indemnity and Profile to be the same.

5

This court will recount the respective positions of the parties without approval or rejection of those positions.

*Appellants' Positions*

A.     In General

Appellants start with a history of Florida's economic loss rule. "The 'economic loss' rule is a court-created doctrine which prohibits the extension of tort recovery for cases in which only a purchased product has been damaged and there is no personal injury or damage to 'other property,' and the losses or damage are economic in nature." *Moransais v. Heathman,* 744 So.2d 973, 979 (Fla.1999) (citation omitted). Appellants contend that a review of the economic loss rule in the Florida courts over the last fifteen years shows an expansion and then contraction of the rule. *See* Charles R. Walker, Note, *Moransais v. Heathman and the Florida Economic Loss Rule: Attempting to Leash The Tort-Eating Monster,* 52 Fla. L.Rev. 769 (2000).

A case relied upon by the district court, which appellants contend is an example of the "expansive" period of Florida's economic loss rule, is *Casa Clara Condo. Assoc., Inc. v. Charley Toppino & Sons, Inc.,* 620 So.2d 1244 (Fla.1993). The factual and procedural posture of that case was as follows:

> Apparently, some of the concrete supplied by Toppino contained a high content of salt that caused the reinforcing steel inserted in the concrete to rust, which, in turn, caused the concrete to crack and break off. The petitioners own condominium units and single-family homes built with, and now allegedly damaged by, Toppino's concrete. In separate actions the homeowners sued numerous defendants and included claims against Toppino for breach of common law implied warranty, products liability, negligence, and violation of the building code. The circuit court dismissed all counts against Toppino in each case. On appeal the district court applied the economic loss rule and held that, because no person was injured and no other property damaged, the

6

homeowners had no cause of action against Toppino in tort. The district court also held that Toppino, a supplier, had no duty to comply with the building code.

*Id.* at 1245 (footnote omitted). The homeowners argued that limiting them to a contractual remedy against the concrete supplier was unfair because they lacked privity of contract with the supplier. The Florida Supreme Court, by a 4-3 vote, held that the economic loss rule applied and barred all the owners' tort claims. *Id.* at 1247. The court also rejected the argument that the "other property" exception to the rule applied, holding that "[t]hese homeowners bought finished products—dwellings—not the individual components of those dwellings. They bargained for the finished products, not their various components. The concrete became an integral part of the finished product and, thus, did not injure 'other' property." *Id.* at 1247.

Appellants point to the dissent in *Casa Clara,* in which three justices reasoned that the economic loss rule

> works well when the loss is suffered by one who is privy to the contract and involves loss that was the subject matter of the contract. It works a mischief, however, where as in this instance the injured party is not privy to the contract but injury to third parties is reasonably foreseeable. The condominium owners here suffered more than the loss of concrete; they suffered the loss of their homes, a foreseeable consequence of faulty concrete....
>
> While I agree with the majority opinion that parties who have freely bargained and entered a contract relative to a particular subject matter should be bound by the terms of that contract including the distribution of loss, *I feel that the theory is stretched when it is used to deny a cause of action to an innocent third party who the defendant knew or should have known would be injured by the tortious conduct.* Toppino knew that the concrete that was the subject matter of the bargain between Toppino and the general contractor would be incorporated into homes that would be bought and occupied by innocent third parties.

*Id.* at 1249 (emphasis added). Appellants also cite the other dissenting opinion,

7

written by two justices, which stated:

> [S]ome applications of the economic loss doctrine may have acceptable viability. But surely it stretches reason to apply the doctrine in this context to deny these homeowners any remedy.
>
> ....
>
> ... Moreover, I cannot subscribe to the majority's view that the defective concrete has not damaged "other property" in the form of the houses' individual components.

*Id.* at 1248. After *Casa Clara,* a court observed that the "economic loss rule is stated with ease but applied with great difficulty." *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.,* 693 So.2d 602, 606 (Fla.Dist.Ct.App.1997) (citation omitted). In light of this difficulty, appellants contend, the Florida Supreme Court began efforts to refine or redefine the rule, which it admitted had been applied "to situations well beyond our original intent." *Moransais,* 744 So.2d at 980.

In *Moransais,* the factual and procedural history was as follows:

> In June 1993, petitioner Philippe Moransais contracted to purchase a home in Lakeland, Florida, from Paul S. Heathman. Moransais also contracted with Bromwell & Carrier, Inc. (BCI), a professional engineering corporation, to perform a detailed inspection of the home and to advise him of the condition of the home. The contract was signed for the corporation by one of the respondents, Lennon D. Jordan, as chief of the civil engineering division. Although the contract was signed by Jordan, it did not name as parties the respondents, Jordan and Larry Sauls, who actually performed the inspection in June of 1993. Moransais alleges that he relied on the engineers' inspection and advice to purchase the home and that after the purchase he discovered defects in the home that should have been, but were not, discovered in the engineering inspection, and that such defects rendered the home uninhabitable.
>
> Moransais filed an action against BCI for breach of contract and against Jordan and Sauls for professional negligence as engineers licensed pursuant to chapter 471, Florida Statutes (1993). The complaint alleged no bodily injury or property damage other than the undisclosed and undetected defects in the home. On the motion of Jordan and Sauls, the trial court dismissed the tort

8

actions against the two engineers with prejudice [because of the economic loss rule].

*Id.* at 974. The Florida Supreme Court addressed the following two questions:

(1) Where a purchaser of a home contracts with an engineering corporation, does the purchaser have a cause of action for professional malpractice against an employee of the engineering corporation who performed the engineering services?

(2) Does the economic loss rule bar a claim for professional malpractice against the individual engineer who performed the inspection of the residence where no personal injury or property damage resulted?

*Id.* at 974.

In answering the first question, the court noted that engineering is a "profession" as defined by Florida law. *See* Fla. Stat. § 95.11 (defining professional as "any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida"). The court noted that under prior cases and the statutory scheme, professionals in Florida are to be held responsible for their negligent acts. 744 So.2d at 977-79. Thus, the court concluded that the homeowners could assert their cause of action "despite the lack of a direct contract" between the parties, and even though the homeowners had direct contract remedies against the seller and the engineering company that employed the individual engineers. *Id.* at 975, 984.

As to the second question, the court "acknowledge[d] that our prior pronouncements on the [economic loss] rule have not always been clear, and, accordingly, have been the subject of legitimate criticism and commentary." *Id.* at 980. Specifically, the court stated:

9

Unfortunately, however, our subsequent holdings have appeared to expand the application of the rule beyond its principled origins and have contributed to applications of the rule by trial and appellate courts to situations well beyond our original intent.

*Id.* at 981. After discussing prior cases, the court went on to discuss *Casa Clara,* noting that the decision "was not unanimous, especially as to our characterization of 'other property.' " *Id.* at 981. The court stated that "[m]ore recently this Court has recognized the danger in an unprincipled extension of the rule, and we have declined to extend the economic loss rule to actions based on fraudulent inducement and negligent misrepresentation." *Id.* at 981. The court ultimately held that the economic loss rule did not preclude the cause of action and noted:

> Today, we again emphasize that by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action, such as those for neglect in providing professional services. Rather, the rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis. We hesitate to speculate further on situations not actually before us. The rule, in any case, should not be invoked to bar well-established causes of actions in tort, such as professional malpractice.

*Id.* at 983 (footnote omitted). Appellants also cite the concurring opinion, written by two justices, which stated: "the economic loss rule should be limited to cases involving a product which damages itself by reason of a defect in the product." *Id.* at 984. Appellants further cite the lone dissent, which stated that the case was "controlled" by *Casa Clara* and that the majority "has effectively overruled our rather recent decision in *Casa Clara* without saying so." *Id.* at 985.

Less than four months after *Moransais,* the Florida Supreme Court decided

10

*Comptech Int'l, Inc. v. Milam Commerce Park, Ltd.,* 753 So.2d 1219 (1999). The

facts and procedural history of that case are as follows:

> Comptech International, Inc. (Comptech) was leasing warehouse space from
> Milam Commerce Park, Ltd. (Milam). The lease was renewed with a provision
> that Milam would renovate the warehouse and create an office for Comptech
> to use for its ongoing computer business. Comptech had previously used the
> warehouse to store its computers and was to continue using the warehouse for
> this purpose both during and after the renovations. The renewal contract
> contained an indemnity clause stating that Comptech agreed to hold Milam
> harmless for "all claims of every kind" including "damaged merchandise,
> equipment, fixture or other property, or damage to business or for business
> interruption, arising, directly or indirectly out of, from or on account of such
> occupancy and use, or resulting from present or future condition or state of
> repair thereof." *Comptech,* 711 So.2d at 1261. The indemnity clause did not
> specifically state that Milam would be held harmless for its own negligence.
> Milam hired a contractor to perform the renovations; however, the renovations
> were performed negligently, causing damage to the computers located in the
> warehouse. In addition, the landlord failed to obtain the required building
> permits for the building addition. Comptech sued Milam for: (1) negligent
> selection of contractor; (2) negligent construction; (3) violation of section
> 553.84; and (4) return of illegally collected rent. The Third District held the
> negligence claims were barred by the economic loss rule, despite the statutory
> duty created by section 553.84. The court also rejected Comptech's argument
> that even if the economic loss rule applied, the computers should have been
> exempted from the rule under the "other property" exception.

*Id.* at 1221-22. The Florida Supreme Court held that the economic loss rule did not

apply, at least in part because the case involved a statutorily created cause of action.

*Id.* at 1223. The court then considered whether the computers were "other property"

and thus exempted from the economic loss rule. In noting the rule's origin in the

context of product liability, the court stated that "[h]ad the courts adhered to these

requirements (a product, the product damaging itself, and economic losses), the

confusion that has abounded in this area of the law would have been minimized." *Id.*

at 1223-24. The court then quoted extensively and approvingly from *Moransais. Id.*

11

at 1224-26.  Discussing the "other property" rule, the court stated:

> This case is not a products liability or similar case.  The subject of the contract between the parties was not a product but a service.  Thus, this case does not involve "other property," as that term was used in *East River* and *Florida Power.*  The term is not truly applicable to a situation such as the one before us where the subject of the contract is a service.

*Id.* at 1226.  The court further stated that "[e]ven under a *Casa Clara* analysis, the computers are 'other property' and not subject to the economic loss rule."  *Id.*  As the court explained:  "The 'product' purchased by Comptech was the renovation of the warehouse.  The computers placed in the warehouse were not an integral part of the product and were therefore 'other property' under the Casa Clara rationale."  *Id.* at 1226-27.

Appellants contend that after *Moransais* and *Comptech,*[5] Florida appellate courts have routinely refused to apply the economic loss rule to cases like this one, i.e., a non-product liability tort action between parties who lack a contractual relationship.  *See* Appellant Br. at 23-25 (other cases, emphasizing lack of contractual relationship).  Here, the instant actions are not product liability actions.  The parties did not have a contractual relationship.  Rather, appellants charge that American negligently repaired the Aircraft and negligently misrepresented the condition of the landing gear.  *Casa Clara* should never apply to these cases, especially in light of the fact that it has been severely curtailed and perhaps even overruled.

Appellants further argue, even if the economic loss rule generally applies to

---

[5]They also contend that prior to *Moransais* and *Comptech,* the economic loss rule, if applied properly, was limited to product liability cases and cases involving an actual contract between the parties.  *See Value House, Inc. v. MCI Telecomm. Corp.,* 917 F.Supp. 5, 7 (D.D.C.1996)(discussing Florida cases);  *see also* Appellant Br. at 25-26.

cases of this type, there are at least three exceptions that would keep it from applying in this particular case.

B.    Other Property

Appellants contend that the damaged Aircraft was "other property" under an economic loss rule exception.  The landing gear, unlike the concrete at issue in *Casa Clara,* was not an "integral part" of the Aircraft.  The Aircraft's parts are independent and distinct from one another.   Although they work together, each part is manufactured and serviced separately from another (airframe, powerplant, propeller, radio, instruments, and accessories), and component parts are interchangeable and independently certifiable as to airworthiness under the FAA regulatory scheme.  *See* 14 C.F.R. §§ 43.3, 43.7, 145.59.  Moreover, this case differs from *Casa Clara,* where the court found that the homeowners had no interest in the individual components, but rather only in the entire home.  Here, appellants are vitally interested in knowing that each and every component part was inspected, in proper working order, and serviced in accordance with FAA regulations.  Lastly, although *Comptech* may not have overruled *Casa Clara,* it at least limited *Casa Clara* to its facts.

C.    Professional Services

Appellants argue that this case does not fall under the economic loss rule because it involved "professional services" and is thus controlled by *Moransais.*  As noted by the court in *Moransais,* the economic loss rule was not intended "to bar well-established common law causes of action, such as those for neglect in providing professional services."  744 So.2d at 983.  Although the court in *Moransais* dealt with

13

a specific statutory definition of "professional," this is not the only definition. *See*

*Garden v. Frier,* 602 So.2d 1273 (Fla.1992), in which the court stated:

> We limit the definition of "professional" set forth above to the context of the professional malpractice statute. *It is not our intent that this definition be applied to any other reference to "professionals" or "professions" elsewhere* in the Florida statutes, regulations, or rules, *or in court cases that deal with issues other than the statute of limitations at issue here.* We recognize that there may be occasions when courts, legislators, rulemaking authorities, and others *may use the terms "profession" and "professional" more broadly* or more narrowly than we do here today.

*Id.* at 1277 (emphasis added). The court further stated:

> We do not deem it possible to develop a comprehensive list of professions ourselves.... Some licensing authorities, for example, merely incorporate by reference professional standards developed by agencies or organizations that are not even part of Florida government....

*Id.* at 1277 n. 9. *See also* Black's Law Dictionary 1226 (7th ed.1999)(defining

"professional"). Here, it is clear that FAA-certified mechanics are highly trained and

should be deemed professionals. Only mechanics who are FAA-certified are allowed

to perform the type of work at issue in this case. The district court's suggestion,

relying on *Lochrane Eng'g, Inc. v. Willingham Realgrowth Inv. Fund, Ltd.,* 552 So.2d

228, 232 (Fla.Dist.Ct.App.1989), that these mechanics simply provide "manual

services" flies in the face of the FAA regulatory scheme.

D.     Negligent Misrepresentation Exception

Finally, appellants contend that the negligent misrepresentation claim does not

fall under the economic loss rule because American is in the business of supplying

information as recognized by section 552 of the Restatement (Second) of Torts, which

provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information,* if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(emphasis added). *See also First Fla. Bank, N.A. v. Max Mitchell & Co.,* 558 So.2d 9 (Fla.1990)(adopting section 552). In rejecting appellants' claim for negligent misrepresentation, the district court relied on *Palau Int'l Traders, Inc. v. Narcam Aircraft, Inc.,* 653 So.2d 412 (Fla.Dist.Ct.App.1995). *Palau* also involved a suit by a subsequent purchaser of an aircraft, and, relying on *Casa Clara,* the court held that the economic loss rule barred an action for negligent inspection which caused the purchaser to incur the expense of repairing the aircraft. 653 So.2d at 415-18. However, as noted above, *Casa Clara* is of questionable authority, while in *Moransais* the court stated that the rule should be limited to "actions in the product liability context." 744 So.2d at 983. Moreover, in *Palau* there was no claim that "other property" was damaged; rather, the plaintiff only sought the cost of the repairs that should have been made. Also, the *Palau* court's conclusion that a FAA-certified mechanic is "in the business of servicing airplanes ... not in the business of supplying information," 633 So.2d at 418, ignores the FAA regulatory scheme whereby repair stations, like American's, regularly supply information in an aircraft's logbook.

### Appellee's Positions

A.    In General

American notes that Florida's economic loss rule "prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury

or damage to any property other than itself." *Casa Clara,* 620 So.2d at 1246. That court further stated that "economic losses are 'disappointed economic expectations,' which are protected by contract law, rather than tort law. This is the basic difference between contract law, which protects expectations, and tort law, which is determined by the duty owed to an injured party." *Id.* at 1246 (citations omitted). The court also noted:

> The purpose of a duty in tort is to protect society's interest in being free from harm and the cost of protecting society from harm is borne by society in general. Contractual duties, on the other hand, come from society's interest in the performance of promises. When only economic harm is involved, the question becomes "whether the consuming public as a whole should bear the cost of economic losses sustained by those who failed to bargain for adequate contract remedies."

*Id.* at 1246-47 (citations omitted). In rejecting the plaintiff's argument that an exception should be created for homeowners, the court stated:

> If a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law. There are protections for homebuyers, however, such as statutory warranties, the general warranty of habitability, and the duty of sellers to disclose defects, as well as the ability of purchasers to inspect houses for defects. Coupled with homebuyers' power to bargain over price, these protections must be viewed as sufficient when compared with the mischief that could be caused by allowing tort recovery for purely economic losses. Therefore, we again "hold contract principles more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage." If we held otherwise, "contract law would drown in a sea of tort."

*Id.* at 1247 (citations and footnotes omitted).

This case, American argues, falls squarely within the holding and rationale of *Casa Clara.* Here, there has been no personal injury and no injury to other property. Here, the public safety concerns that support tort actions are not present because only

16

the aircraft sustained damage. Thus, there is no reason to spread the cost to the public as a whole. This is clearly a case of "disappointed economic expectations," and appellants could have protected themselves in several ways. They could have required a detailed and independent inspection, obtained additional insurance, or secured a warranty under an independent warranty scheme. Also, finding for appellants would require aviation repair stations to become guarantors to unknown and remote third parties for routine maintenance and logbook entries. Plus, American notes, *Casa Clara* has not been overruled and remains the law in Florida.

American also contends that *Moransais,* relied upon by appellants, explicitly applied solely to professional negligence cases. *See* 744 So.2d at 974 (statement of the issue before the court), 983-84 (holding of the case). Here, appellants have not alleged professional negligence against American. There is no evidence that any of American's mechanics earned "a four-year college degree before" possible licensing. *Id.* at 976. American also contends that any such claim would be barred by the applicable statute of limitations. *See* Appellee Br. at 17 n.3. Finally, in contrast to *Moransais,* appellants cannot allege that they hired American or that American knew that they were intending to rely on their work.

Even if *Moransais* did apply, American contends, appellants' tort claims would still be barred. Appellants have alleged that there was a duty to service the Aircraft's landing gear in a manner such that it would be reasonably safe to use, that American breached that duty, that the breach caused the injury, and that there were damages. Clearly, American argues, this is a products liability case under Florida law. *See*

17

*Pritchett v. E.I. Du Pont De Nemours & Co.,* (M.D.Fla. April 12, 1994)("In Florida ... the elements of the negligence cause of action in a product liability case are: 1. The manufacturer must have a legal duty to design and manufacture a product reasonably safe for use; 2. The manufacturer must fail to comply with that duty; 3. The plaintiff must have an injury that is legally caused by the manufacturer's breach of duty; and 4. The plaintiff must have suffered damages.").

Moreover, the policy considerations applicable in a products liability case apply here as well. Appellants were in the best position to anticipate problems and could have protected themselves with contract language, warranties, negotiations, and additional insurance. A finding for appellants would spread the cost to other consumers, even though appellants failed to avail themselves of the opportunities for protection.

American also argues that the absence of privity does not bar the application of the economic loss rule. Appellants should be barred from claiming that there is no privity, since they sought to establish some type of contractual relationship with respect to their breach of warranty claim. *See* Appellee Br. at 22. However, even assuming that there is no privity, the economic loss rule would apply. American contends that the economic loss rule can apply to situations where there is no contractual relationship between the parties. *See, e.g., Airport Rent-A-Car, Inc. v. Prevost Car, Inc.,* 660 So.2d 628, 630-31 (Fla.1995); *Casa Clara,* 620 So.2d at 1248; Appellee Br. at 22-23. American quotes from *Florida Bldg. Inspection Servs., Inc. v. Arnold Corp.,* 660 So.2d 730 (Fla.Dist.Ct.App.1995), in which the court stated:

> Under limited circumstances, Florida courts have recognized exceptions to the economic loss doctrine, and have allowed recovery from certain types of negligent providers of services who were not in privity with the plaintiff. However, in these cases a duty was established to plaintiffs who were identifiable third party beneficiaries of the contract to provide services.

*Id.* at 732 (citations omitted). The court held that a warehouse sublessee could not recover in tort against a roof inspector hired by the lessee because there was "no indication that the services provided by [the inspector] to [the lessee] were intended to primarily and directly benefit [the sublessee]." *Id.* at 733. The court reasoned that the sublessee

> was fully capable of assuring the condition of the roof by choosing and hiring its own inspectors rather than relying upon CPS's inspector. The fact that Arnold chose to accept the risk of relying upon the information supplied by CPS does not impose a duty upon FBIS, who did not know what CPS did with the report after it was delivered.

*Id.* at 733. Here, appellants conceded that they could not amend the complaint to claim intended beneficiary status. *See* Appellant Br. at 9. As in *Arnold,* there is no indication that American intended to primarily and directly benefit appellants. Also, as in *Arnold* and as noted above, appellants had the means to protect their own interests, but did not.

Here, Indemnity has filed suit in the United States District Court for the District of South Carolina against Stevens Aviation, Inc., the entity that inspected the aircraft landing gear actuators, alleging, among other things, breach of warranty. Since Indemnity, as subrogee of Profile's interest, has a contractual remedy against another

19

party, the economic loss rule can apply.[6]

B.    Other Property

American argues the landing gear is an integral part of the Aircraft. It would be absurd to suggest that appellants bought an assortment of aircraft parts, not the aircraft itself. American cites several cases to support its position that the landing gear component was an integral part of the Aircraft itself. *See, e.g., Casa Clara,* 620 So.2d at 1247; *Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.,* 145 F.Supp.2d 1348, 1360 (S.D.Fla.2001)(damage to finished product by component "does not come within the economic loss rule's other property damage exception"). *See* Appellee Br. at 27-28 (other cases). American contends that " 'other property' [is] such damage as would occur if defective brakes on truck caused it to run into and damage a home." *American Univ. Ins. Group v. Gen. Motors Corp.,* 578 So.2d 451, 454 (Fla.Dist.Ct.App.1991)(*citing American Home Assurance Co. v. Major Tool & Machine, Inc.,* 767 F.2d 446 (8th Cir.1985)). Here, Profile bargained for and bought an airplane, not an amalgamation of parts and components. The landing gear would be useless if not integrated into the Aircraft. The Aircraft is simply not "other property." Appellants' reliance on *Comptech* is misplaced, because that case clearly involved computers which obviously were not an integral part of a warehouse in which they were stored.

C.    Professional Services

---

[6]To support this argument, American cites *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.,* 208 F.Supp.2d 1310, 1314 (S.D.Fla.2002).

20

The "professional" exception articulated in *Moransais* does not apply. Appellants have not pled a professional malpractice action and should not be allowed to argue that exception now. Moreover, American argues, the four-year degree requirement set out in *Moransais* has been consistently applied to determine whether or not someone is a professional. *See* Appellee Br. at 31-33. Although the FAA-certified mechanics do undergo extensive training, "[t]here can be no equivalency exception" to the four-year college degree requirement. *See Garden v. Frier,* 602 So.2d 1273, 1275 (Fla.1992). FAA-mechanics are not required to a have a four-year college degree, and thus are not professionals.

D.    Negligent Misrepresentation

The negligent misrepresentation exception does not apply because American is not in the business of supplying information for the benefit of appellants. It is undisputed that American is in the business of maintaining and inspecting aircraft and that the only reason it makes entries into a logbook is because of FAA regulations. Moreover, in *First Florida Bank, N.A. v. Max Mitchell & Co.,* 558 So.2d 9 (Fla.1990)(adopting the exception), the court stated:

> [W]e are persuaded by the wisdom of the rule which limits liability to those persons or classes of persons whom an accountant "knows" will rely on his opinion rather than those he "should have known" would do so because it takes into account the fact that an accountant controls neither his client's accounting records nor the distribution of his reports....

*Id.* at 15. Here, there is no evidence that American knew that appellants would rely on the information supplied in the logbook. Indeed, appellants conceded that they could not amend their breach of warranty claims because they could not in good faith

21

allege that they enjoyed intended beneficiary status. The exception has been employed in "very limited circumstances." *See Palau,* 653 So.2d at 417. *See also* Appellee Br. at 36 (other cases).

*Palau,* which found that an aircraft repair station did not "supply information" under § 552, is still good law, and nothing in *Moransais* or *Comptech* suggests that the Florida Supreme Court would have decided the case differently. *See* Appellee Br. at 37-40 (discussion of *Palau* ).[7] *See also Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc.,* 24 F.3d 125, 132-33 (10th Cir.1994)(holding that § 552 did not apply to similar FAA required information regarding a helicopter).

*Conclusion*

This court has summarized the positions of the parties without approval or rejection. These summaries are not intended to limit the arguments of the parties before the Supreme Court of Florida.

While we have summarized the respective positions of the parties, we do not suggest how the state law(s) should be interpreted or applied. "Where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Mosher v. Speedstar Div. of AMCA Intern., Inc.,* 52 F.3d 913, 916-17 (11th Cir.1995) (citation omitted). We have a doubt as to the correct answers to the following questions of Florida law:

---

[7]American also notes that FAA regulations require an aircraft's owner to annually conduct a complete inspection of the aircraft. *See* 14 C.F.R. § 91.409(a)(1), (d)(4). Thus, between the date of the alleged negligence and the date of the incident, the aircraft would have been inspected at least twice. *See* Appellee Br. at 39.

I.   WHETHER THE "ECONOMIC LOSS" DOCTRINE OF FLORIDA APPLIES TO ALLEGED TORTS IF THE DEFENDANT HAS PROVIDED SERVICES TO A PRODUCT RATHER THAN HAS SOLD A PRODUCT.

II.  WHETHER THE "ECONOMIC LOSS" DOCTRINE OF FLORIDA APPLIES IF THERE IS NO CONTRACTUAL RELATIONSHIP BETWEEN THE PLAINTIFFS AND THE DEFENDANT.

III. WHETHER THE "ECONOMIC LOSS" DOCTRINE OF FLORIDA APPLIES TO THE FACTS OF THIS CASE WITH REGARD TO DAMAGE TO THE TOTAL AIRCRAFT AS OPPOSED TO MERE DAMAGE TO THE LANDING GEAR UNDER THE "OTHER PROPERTY" EXCEPTION.

IV.  WHETHER THE PROVIDING OF CERTIFIED MECHANICAL SERVICES FALLS UNDER THE CATEGORY OF THE "PROFESSIONAL SERVICES" EXCEPTION TO THE "ECONOMIC LOSS" DOCTRINE OF FLORIDA OR UNDER SOME RELATED SERVICES EXCEPTION.

V.   WHETHER THE NEGLIGENT MISREPRESENTATION CLAIM IN THIS CASE PROVIDES AN EXCEPTION TO THE "ECONOMIC LOSS" DOCTRINE OF FLORIDA.

CERTIFICATION

We certify the above-styled questions to the Supreme Court of Florida. The phrasing used in these certified questions should not restrict that Court's consideration of the problems of state law posed by this case. This extends to any restatement of the issues by that Court and the manner in which the answers are given. To assist that Court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Florida.

QUESTIONS CERTIFIED.

23