PAUL G. BYRON, UNITED STATES DISTRICT JUDGE
This cause is before the Court on Plaintiff's Amended Motion and Memorandum *1294 for Class Certification (Doc. 106), filed March 2, 2017. Defendant filed a response in opposition (Doc. 110), on March 17, 2017. Upon due consideration, Plaintiff's Motion for Class Certification is denied.
I. BACKGROUND
Plaintiff, Michelle Hummel ("Hummel"), initiated this class action against Defendant, Tamko Building Products, Inc. ("Tamko"), seeking damages associated with defective roofing shingles manufactured, marketed, and sold by Tamko. Starting in 2004, Tamko sold nearly seven million squares of Heritage Series fiberglass asphalt roofing shingles (the "Shingles") within the state of Florida. (Doc. 106, p. 7). Tamko warranted that its Shingles were compliant with applicable industry standards, and also warranted that its Shingles would last at least as long as guaranteed in their twenty, twenty-five, thirty, and fifty-year warranties. (Id. ). Hummel alleges that the Shingles all suffered from common design defects that caused the Shingles to fail after a fraction of their warrantied life, causing property damage. (Id. ). Hummel contends that Tamko knew of the design defects and yet took no steps to correct the problem, withdraw the product from the market, or fulfill the warranties on products sold. (Id. ).
Plaintiff initiated this class action on June 5, 2015, seeking damages for violation of the Florida Deceptive and Unfair Practices Act ("FDUTPA"), breach of express warranty, strict products liability, negligence theories, and declaratory relief. Hummel seeks to certify a class consisting of all "current or former owners of structures located within the State of Florida on which Tamko Heritage Series Shingles are or were installed." (Id. at p. 8). Hummel also seeks certification of a subclass for purposes of declaratory relief.
II. STANDARD OF REVIEW
To certify a class action, the moving party must satisfy a number of prerequisites. First, the named plaintiff must demonstrate standing. Vega v. T-Mobile USA, Inc. , 564 F.3d 1256, 1265 (11th Cir. 2009). Second, the putative class must meet all four requirements enumerated in Federal Rule of Civil Procedure 23(a). Id. Those four requirements are "numerosity, commonality, typicality, and adequacy of representation." Id. (quoting Valley Drug Co. v. Geneva Pharm., Inc. , 350 F.3d 1181, 1188 (11th Cir. 2003) ). Third, the putative class must fit into at least one of the three class types defined by Rule 23(b). Id.
Relevant to this case, Rule 23(b)(3) permits certification of a class where (1) common questions of law or fact predominate over questions affecting class members individually, and (2) a class action is the superior method for resolving these common questions. Id. A party moving for certification of a Rule 23(b)(3) class in this Court also faces the added hurdle of proposing a cost-effective means of providing notice to putative class members. M.D. Fla. R. 4.04(b).
To certify a subclass within a class action, the moving party must show (1) that the proposed subclass independently satisfies the same prerequisites for certifying a class: standing, numerosity, commonality, typicality, adequacy of representation; and (2) that the subclass falls into at least one of Rule 23(b)'s three class types. See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig. , 209 F.R.D. 323, 351 (S.D.N.Y. 2002). The party moving to certify any class or subclass ultimately bears the burden of proving that all prerequisites are met. See Brown v. Electrolux Home Prods., Inc. , 817 F.3d 1225, 1233-34 (11th Cir. 2015).
*1295 III. DISCUSSION
A. The Proposed Class
Hummel seeks certification of the following damages class:
All persons and entities who, as of the date class notice is issued, are current or former owners of structures located within the State of Florida on which Tamko Heritage Series Shingles are or were installed from 2004 to the present.
(Doc. 106, p. 8). The Court will review each of the requirements for class certification in turn.
1. Standing
A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction. Clapper v. Amnesty Int'l USA , 568 U.S. 398, 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013). To establish standing, the plaintiff bears the burden of demonstrating that she suffered an actual injury, a causal connection exists between this injury and the defendant's conduct, and her injury is likely to be redressed by a favorable decision. Harrell v. Fla. Bar , 608 F.3d 1241, 1253 (11th Cir. 2010). Prior to summary judgment, these elements are not particularly onerous and will be satisfied by "general factual allegations of injury resulting from the defendant's conduct." Lujan v. Defenders of Wildlife , 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
In her Amended Complaint, Hummel alleges that she purchased and installed Tamko's Shingles on her home in 2004, after relying on Tamko's representations regarding the quality and durability of the Shingles and the inclusion of a thirty-year warranty. (Doc. 38, p. 4-5). Beginning in 2012, Hummel began experiencing problems with the Shingles; specifically, the Shingles began collecting algae and staining, and eventually led to water intrusion into Hummel's home. Hummel contacted Tamko to complain about the performance of the Shingles, and completed a warranty claim on the defective Shingles. (Id. at p. 5). On February 18, 2015, Hummel received a letter from Tamko denying her warranty claim and refusing to provide compensation or any other remedy. (Id. ). These facts sufficiently allege an actual injury suffered by Hummel, which an award of damages would remedy. Accordingly, Hummel has sufficiently demonstrated her standing to bring and maintain the instant suit.
2. Numerosity
Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The general rule is that more than forty members is sufficient to demonstrate that joinder is impracticable. Marcus v. BMW of N. Am., LLC , 687 F.3d 583, 595 (3d Cir. 2012). While the party seeking certification need not identify the exact number of members in the proposed class, she cannot rest on "mere allegations of numerosity." Evans v. U.S. Pipe & Foundry Co. , 696 F.2d 925, 930 (11th Cir. 1983). Rather, the movant must provide the court with sufficient proof to support a reasoned finding that the certified class would meet the numerosity requirement. Vega , 564 F.3d at 1267.
Here, Hummel asserts that Tamko sold nearly seven million squares of its Heritage Shingles within the State of Florida, which is enough product to cover approximately 230,000 averaged-sized homes, easily satisfying the numerosity requirement.
3. Commonality
Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This prerequisite does not demand that all *1296 questions of law or fact be common among the class members, only that all members base their claims on a common contention that is "capable of classwide resolution." Wal-Mart Stores, Inc. v. Dukes , 564 U.S. 338, 349-50, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). One common question of law or fact is sufficient so long as answering the question is central to determining the validity of all of the class members' claims and will aid in the resolution of the case. Id. at 359, 131 S.Ct. 2541.
Hummel contends that this lawsuit involves the following common questions of law and fact:
• Whether the Shingles contained a manufacturing defect when they left the factory, caused by a common defect in the manufacturing process;
• Whether the manufacturing defect in the Shingles was, is, and/or will be the cause of granule loss which will result in premature failure;
• Whether Tamko's representations violated the Florida Deceptive and Unfair Trade Practices Act;
• Whether the defects in the Shingles breached Tamko's expressed warranties;
• Whether the shingles met industry standards as Tamko represented;
• Whether Tamko knew, or should have known, that the Shingles were defective and unfit for Florida consumers when Tamko was marketing and selling them to Florida consumers;
• Whether Tamko made false representations to [Hummel] and class members who attempted to make a warranty claim;
• Whether the just compensation to remedy the installation of Tamko's defective Shingles is ...sufficient to replace their roofs.
(Doc. 106, p. 20). The Court is satisfied that these questions of law and fact are common to all purchasers of allegedly defective Shingles. The commonality requirement is, therefore, easily satisfied here as well.
4. Typicality
Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This element of certification "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." Mullen v. Treasure Chest Casino, LLC , 186 F.3d 620, 625 (5th Cir. 1999) (quoting Lightbourn v. Cty. of El Paso , 118 F.3d 421, 426 (5th Cir. 1997) ), cert. denied , 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000). The named plaintiff's claims do not need to be identical to the claims of the absent class members, but they should "share the same essential characteristics" such that it would make sense for the plaintiff to act as the class's representative. Haggart v. United States , 89 Fed.Cl. 523, 534 (Fed. Cl. 2009) (quoting Curry v. United States , 81 Fed.Cl. 328, 335 (Fed. Cl. 2008) ).
Here, Hummel asserts that the claims of all the class members involve the same Shingles that suffer from the same problems. Moreover, Hummel demonstrates that she, like all other class member, purchased the allegedly defective Shingles. Hummel consequently shares the same legal and remedial theories as the class and it would make sense for her to act as the class's representative. Typicality is therefore satisfied.
5. Adequacy of Representation
Adequacy of representation requires that "the representative parties will *1297 fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation refers both to the named plaintiff who intends to represent the absent class members and to the lawyers who intend to serve as class counsel. London v. Wal-Mart Stores, Inc. , 340 F.3d 1246, 1253 (11th Cir. 2003). Regarding the latter, class counsel will adequately represent the class if they are "qualified, experienced, and generally able to conduct the proposed litigation." Griffin v. Carlin , 755 F.2d 1516, 1533 (11th Cir. 1985). This requires the court to evaluate a number of factors, including counsel's knowledge and experience with class action litigation, counsel's knowledge and experience with the substantive law governing the class's claims, the resources available to counsel to pursue the class's claims, the quality of counsel's litigation efforts so far, and any other relevant factor speaking to counsel's ability to represent the class's legal interests. See William B. Rubenstein, Newberg on Class Actions , §§ 3:73 - 3:79 (5th ed. 2011).
Hummel has produced the firm profile of her chosen attorneys, which highlights the resumes of the attorneys working on the case. (Doc. 99-24). The firm profile describes multiple qualified attorneys with many years of experience working on complex civil litigation cases. The Court therefore finds counsel to be adequately qualified, experienced, and capable to act as class counsel in this case.
6. Predominance and Superiority
In addition to demonstrating standing and satisfying Rule 23(a)'s four prerequisites, a plaintiff must show that the putative class she wishes to certify falls into at least one of Rule 23(b)'s three class types. In this case, Hummel moves to certify the class under Rule 23(b)(3). This rule affords class status where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These two elements are referred to as "predominance" and "superiority," respectively.
a. Predominance
Predominance refers to the class's cohesion as a whole and examines whether adjudication of members' individual interests on a classwide basis would be appropriate. Amchem Prods., Inc. v. Windsor , 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In determining predominance, the district court assesses the issues of law and fact likely to arise during the litigation and weighs whether issues common to the class predominate over issues which are unique to each individual class member. Id. at 622-23, 117 S.Ct. 2231 & n.18. Ultimately, predominance revolves around the quality, rather than the quantity, of the class members' shared interests. Stillmock v. Weis Mkts., Inc. , 385 Fed.Appx. 267, 272 (4th Cir. 2010). Where the litigation is defined by individualized inquiries regarding the defendant's possible liability to each class member, predominance is lacking and certification should be denied. Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc. , 601 F.3d 1159, 1170 (11th Cir. 2010). However, where the class members seek answers to the same questions and those answers would "have a direct impact on every class member's effort to establish liability," common issues predominate and certification should be granted. Id. (internal quotation marks and emphasis omitted) (quoting Vega , 564 F.3d at 1270 ).
Hummel argues that common factual and legal questions predominate over individualized issues in this case. Specifically, Hummel contends that the proof of defects *1298 in the Shingles will be common to all members of the class. The Court disagrees, however, finding that the specific facts of this case require the Court to engage in an individualized inquiry as to each count in the Complaint, such that class certification is inappropriate in this case.
(1) Express Warranty Claim
The parties agree that, in Florida, to recover for breach of express warranty, Plaintiff must establish (1) a sale of goods; (2) an express warranty; (3) a breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach. Dunham-Bush, Inc. v. Thermo-Air Serv., Inc. , 351 So.2d 351, 353 (Fla. 4th DCA 1977).
The notice requirement is found in Florida Statute § 672.607(3)(a), which provides that "the buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy ...." Fla. Stat. § 672.607(3). This notice requirement "is a valid precondition of imposing liability on a seller of goods" for breach of warranty. Gen. Matters, Inc. v. Paramount Canning Co. , 382 So.2d 1262, 1264 (Fla. 2d DCA 1980) ; Hapag-Lloyd, A.G. v. Marine Indem. Ins. Co. of Am. , 576 So.2d 1330, 1330 (Fla. 3d DCA 1991) ("[T]he failure to afford the seller reasonable notice of an already-discovered defect until after the loss caused by the breach of warranty had already occurred ... requires a conclusion that, as the statute provides, the buyer is barred from any remedy.") (internal quotations omitted).
The determination of whether or not a seller of goods has received adequate notice of an alleged defect is a highly individualized inquiry. Thus, in order to succeed on their claims of breach of express warranty, each member of the class would have to show that he or she provided Tamko adequate notice of the alleged defects in the Shingles within a reasonable time. The determination of what constitutes a reasonable amount of time is also a highly individualized inquiry. "What is considered a reasonable time for one putative class member would not necessarily be considered reasonable for another." Cohen v. Implant Innovations, Inc. , 259 F.R.D. 617, 642 (S.D. Fla. 2008).
In her Motion for Class Certification, Hummel argues that "the only allegedly individual issues are damages, which ... do not present any barrier for class certification." (Doc. 106, p. 25). Hummel provides the Court with no argument as to how the issue of notice-which is a required element of breach of express warranty in Florida-predominates over all of the named class members. Hummel thus fails to carry her burden of establishing that the requirements of certification are met. See, e.g., Brown , 817 F.3d at 1233 ("The party seeking class certification has the burden of proof".).
Moreover, several courts addressing class certification for breach of express warranty claims in Florida have found the issue of notice to be an individualized inquiry requiring denial of class certification. See, e.g., City of St. Petersburg v. Total Containment, Inc. , 265 F.R.D. 630, 655 n.3 (S.D. Fla. 2010) ("Whether proper notice was given is a highly individualized factual determination and depends on differing facts and circumstances."); Cohen , 259 F.R.D. at 642. Indeed, the Eleventh Circuit has reversed a district court's grant of class certification for classifying the issue of notice in a breach of warranty claim as a "common question." Brown , 817 F.3d at 1238.
Here too, the issue of whether or not the class members provided Tamko with notice, within a reasonable time, is an inquiry that will require individualized evidence. Accordingly, the Court cannot find that issues common to the class predominate *1299 over issues that are unique to each individual class member. Class certification for Plaintiff's breach of express warranty claim must, therefore, be denied.
(2) Strict Liability
In Florida, strict product liability actions require proof that "(1) a product (2) produced by a manufacturer (3) was defective or created an unreasonable dangerous condition (4) that proximately caused (5) injury." Edward Chadbourne, Inc. v. Vaughn , 491 So.2d 551, 553 (Fla.1986).
In this case, Hummel attempts to certify a class that contains all "current or former owners of structures located within the State of Florida on which Tamko Heritage Series Shingles are or were installed from 2004 to the present." (Doc. 106, p. 8). Hummel claims that "proof of the defect in the Tamko shingles will be common to all member of the class. Either there was a defect in all the shingles ... or there was not." (Id. at p. 27). However, the defense points out that the Shingles manufactured during the relevant time frame in Florida were produced at different plants that utilized different processes, different equipment, and different materials. Determining whether the Shingles suffered from a defect will require individualized evidence of which factory the specific Shingles were manufactured, what processes were used in manufacturing the Shingles, and what equipment and materials were used. Such individualized inquiries are inherently unsuitable for class-wide resolution.
(3) Negligence Claims
The main hurdle to certification of Hummel's negligence actions is the issue of causation. The elements of a negligence cause of action in a product liability case are "(1) the manufacturer was under a legal duty to design and manufacture a product reasonably safe for use, (2) the manufacturer breached that duty, (3) the plaintiff suffered an injury that is legally caused by the manufacturer's breach, and (4) the plaintiff suffered damages." Indem Ins. Co. of N. Am. v. Am. Aviation, Inc. , 344 F.3d 1136, 1146 (11th Cir. 2003) (per curiam). In Florida, the causation standard requires proof that the defendant's negligence more likely than not caused the plaintiff's injury. Id.
In this case, the causation inquiry will require proof that any alleged defects in the class member's Shingles were caused by a breach of duty by Tamko in its design and manufacturing of the Shingles. The very nature of shingles makes such an inquiry highly individualized. There are many causes of shingle and roofing defects, such as weather-related problems, build-up of leaves and debris, foot traffic, excessive and/or harmful cleaning, and environmental factors such as heat and moisture. See Gonzalez v. Corning, 317 F.R.D. 443, 520 (W.D. Pa. 2016) ("[T]here are many reasons that a shingle might crack, degranulate, fragment, or deteriorate that are unrelated to the design specification used to manufacture the shingle, including ordinary and acceptable wear and tear."). Indeed, the record before the Court suggests that individual inquiry will be required to determine the cause of the alleged Shingle damage in this case. For example, Hummel's expert, Dean Rutila, testified that the Shingles can be damaged from cleaning activities, such as pressure washing and the application of certain cleaning solutions. (Doc. 110-9, 244:21-249:21). Rutila's testimony also indicates that some of these potential harmful activities were conducted on Hummel's roof, suggesting that further inquiry is needed to determine the cause of damage to Hummel's roof and Shingles. Similar investigations will also be required for all of the individual class members, making the negligence *1300 claims raised by Hummel inherently ill-suited for class certification.
(4) FDUTPA Claim
In her Amended Complaint, Hummel alleges that Tamko violated FDUTPA by making misrepresentations regarding the Shingles on its website and other online and promotional sources.
FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Therefore, in order to prove liability under FDUTPA, the Court must find that "(1) each putative class member was exposed to [Tamko's] advertising and marketing materials alleged to constitute a deceptive trade practice and (2) if exposed, the advertising and marketing materials caused each putative class member damage." Montgomery v. New Piper Aircraft, Inc. , 209 F.R.D. 221, 229 (S.D. Fla. 2002).
Cases finding that individualized inquiries outweighed common questions under FDUTPA, and therefore defeated predominance, arose in situations where different representations were made to different class members. For example, in Miami Auto. Retail, Inc. v. Baldwin , 97 So.3d 846 (Fla. 3rd DCA 2012), the court denied class certification of a FDUPTA claim because "each class member's claim [would] require individualized determinations about what was represented or promised to each class member." Id. at p. 856. Similarly, in Black Diamond Props., Inc. v. Haines , 940 So.2d 1176 (Fla. 5th DCA 2006), the court found class certification was inappropriate where "the very core of plaintiff's complaint [was] the allegation that oral and written misrepresentations took place in 500 separate oral contract transactions spanning many years and involving numerous sales personnel." Id. at 1178.
Similarly here, the Court finds that the predominance requirement has not been met because the nature of the case will require the Court to conduct an inquiry into what, if any, misrepresentations were made to each individual class member. The Court must determine whether individual members reviewed specific product literature, or whether individual members reviewed the website in anticipation of purchasing the Shingles. Moreover, insofar as the alleged misrepresentations were made within the terms of a limited warranty, Tamko has submitted that the limited warranties provided to customers during the relevant class period differed in language and in terms. (Doc. 110, p. 27). Thus, in order to determine whether an individual class member was exposed to misrepresentations within their limited warranty, the Court must engage in an individualized inquiry as to which limited warranty was provided to each class member, and what the various terms were included in that warranty. Such fact-intensive individualized inquiries do not meet predominance requirement for class certification.
Based on the foregoing, the Court determines that class certification for all remaining claims in Hummel's Amended Complaint is inappropriate. The Court now turns to Hummel's request to certify a declaratory judgment subclass.
B. The Declaratory Judgment Subclass
Hummel seeks to certify a subclass for the purposes of declaratory relief pursuant to Rule 23(b)(2). " Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.' "
*1301 Wal-Mart Stores, Inc. , 564 U.S. at 360, 131 S.Ct. 2541 (citing Fed. R. Civ. P 23(b)(2) ). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted-the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Id. "The (b)(2) class action is reserved for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." Joseph M. McLaughlin, 1 McLaughlin on Class Actions § 5:15 (13th ed.).
Claims for monetary relief may not be certified under Rule 23(b)(2), "at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief." Wal-Mart Stores , 564 U.S. at 360, 131 S.Ct. 2541. "By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." Murray v. Auslander , 244 F.3d 807, 812 (11th Cir. 2001) (citing Allison v. Citgo Petroleum Corp. , 151 F.3d 402, 415 (5th Cir. 1998) ).
In her Amended Complaint, Hummel "seeks actual, compensatory, consequential, and/or incidental damages to Plaintiff and members of the proposed Classes," along with restitution and punitive damages. (Doc. 38, pp. 35-36). Hummel also seeks "declaratory and injunctive relief ... including a preliminary and permanent injunction enjoining Defendant from continuing the unlawful practices ...and directing Defendant to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendant." (Id. ). Hummel does not request monetary damages as a "group remedy." Instead, she seeks damages as a remedy for the individual damages caused by the alleged "unlawful practices" by Tamko, or in other words, damages incurred by the individual class members caused by the defective Shingles manufactured by Tamko. The damages sought are, therefore, not "incidental" to Hummel's claim for declaratory relief. As such, certification under Rule 23(b)(2) is inappropriate.
IV. CONCLUSION
Based on the foregoing, the Court finds that individual issues permeate every claim in Hummel's Amended Complaint, making class certification unmanageable and inappropriate. The Court also finds that the class member's claims for monetary damages are not incidental to the declaratory relief sought, making certification of a declaratory judgment subclass likewise inappropriate. Accordingly, it is ORDERED AND ADJUDGED as follows:
1. Plaintiff's Motion for Class Certification (Doc. 106) is DENIED .
2. In light of the Court's denial of class certification, Plaintiff is DIRECTED to show cause how this Court continues to have subject matter jurisdiction over Plaintiff's remaining individual claims. Plaintiff's response is due within fourteen (14) days of the date of this Order.
DONE AND ORDERED in Orlando, Florida, on September 7, 2017.